IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FT. SMITH DIVISION

TARILYN SMITH                                                                                               PLAINTIFF

V.                                   NO. 11-2106

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration                          DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Tarilyn Smith, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**I.     Procedural Background:**

Plaintiff filed her application for DIB on December 11, 2008, alleging an inability to work due to "Chronic back pain at L4 and L5; depression." (Tr. 109-110, 131). An administrative hearing was held on December 1, 2009, at which Plaintiff appeared with counsel and testified. (Tr. 25-59).

By written decision dated April 15, 2010, the ALJ found Plaintiff had the following severe impairments: obesity and degenerative disc disease of the lumbar spine. (Tr. 14). However, after reviewing all of the evidence presented, he determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing

of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 16). The ALJ found that Plaintiff had the residual functional capacity (RFC) to perform:

> light work as defined in 20 CFR 404.1567(b) with an ability to lift and carry 10 pounds occasionally and 10 pounds frequently. The claimant is able to sit for about 6 hours during an eight-hour workday and stand and walk for at least 2 hours during and eight-hour workday. The claimant is able to occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. The claimant is able to climb ladders, ropes or scaffolds.

(Tr. 16-17). With the help of a vocational expert (VE), the ALJ determined Plaintiff would be capable of performing past relevant work as a data entry clerk and production analyst in a nursing home. (Tr. 19).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which considered additional medical records and denied that request on May 3, 2011. (Tr. 1-4). Subsequently, Plaintiff filed this action. (Doc. 1). The case is before the undersigned pursuant to the consent of the parties. (Doc. 5). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 11, 12).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.     Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports

the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. §416.920. Only if the final

stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity (RFC).  See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

**III.   Discussion:**

Plaintiff raises five issues on appeal: 1)  The ALJ's reliance on the opinion evidence is flawed; 2) The ALJ erred as it relates to RFC;  3) The ALJ failed to consider the effects of obesity; 4) The ALJ failed to consider the side effects of medication; and 5) The ALJ erred as it relates to credibility.

**A.    ALJ's Reliance on Opinion Evidence:**

Plaintiff argues that when Plaintiff was sent for a consultative examination by Dr. Rebecca Floyd, M.D., she was instead examined by a nurse practitioner, Maria Pham-Russell, APN.  Therefore, it is argued that the opinion is not from an "acceptable medical source" as required by 20 C.F.R. 404.1513(d)(1).  In his opinion, the ALJ gave the opinion "some slight weight." (Tr. 19).

In the report, the examiner reported that Plaintiff was 5'8" tall and weighed 340 pounds. Plaintiff had negative straight-leg raising, and the strength in her upper and lower extremities was 5/5. (Tr. 266).  Plaintiff had no muscle atrophy and had a steady gait.  She had normal grip in both hands and could squat/arise from a squatting position, with difficulty. (Tr. 266).  She had normal range of motion in all extremities, and flexion in her lumbar spine was 80 out of a possible 90. (Tr. 267).  There was no edema. (Tr. 267).  Plaintiff was diagnosed with lumbago, hip pain, and morbid obesity. (Tr. 268).  Plaintiff was reported to have "mild-moderate lifting limitation." (Tr. 268).

The report in question indicates that it was "SIGNED BY Marie Pham-Russell, APN, Nurse Practitioner (MP)." (Tr. 268). After that, there appears to be a "stamped signature" of Rebecca Floyd. (Tr. 268). The Court is therefore unsure whether Dr. Floyd or Ms. Pham-Russell conducted the examination, and will not speculate as to such. Had the record not contained other sufficient evidence to support the ALJ's decision,[1] or had the ALJ given the opinion great weight, the undersigned might have remanded this matter to the ALJ in order to clarify who conducted the examination. However, the Court believes there is other substantial evidence to support the ALJ's findings, and remand on this issue is not necessary.

**B.     RFC Assessment:**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8thCir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

---

[1] The other evidence will be discussed more fully below.

In the present case, the ALJ considered the medical assessments of examining and non-examining agency medical consultants, Plaintiff's subjective complaints, and her medical records when the ALJ determined Plaintiff could perform work at the sedentary level with some limitations.

Plaintiff saw Dr. Laura Henson and Dr. Carolyn Dillard at Pointer Trail Family Clinic from July of 2008 to July 10, 2009, and saw an APN at the clinic one time in 2010. (Tr. 215-220, 232-235, 276-279, 334-335, 338-345, 361-364). During those visits, Plaintiff was diagnosed with various conditions, such as low back pain, anxiety, depression, fatigue, and obesity.

On January 15, 2009, Dr. Bill F. Payne completed a Physical RFC Assessment. (Tr. 223-230). Dr. Payne found that Plaintiff could occasionally lift and/or carry (including upward pulling) 20 pounds; frequently lift and/or carry (including upward pulling) 10 pounds; stand and/or walk (with normal breaks) for a total of about 6 hours in an 8 hour workday; sit (with normal breaks) for a total of about 6 hours in an 8 hour workday; and push and/or pull (including operation of hand and/or foot controls) unlimited, other than as shown for lift and/or carry. (Tr. 224). Dr. Payne also found that no postural, manipulative, visual, communicative, or environmental limitations were established. (Tr. 225-227). Dr. Payne noted some limitations in Plaintiff's activities of daily living due to pain, and gave Plaintiff a "Light RFC." (Tr. 230).

X-rays of Plaintiff's lumbar spine were taken on February 10, 2009, and the impression was: 1) Limited evaluation L5-S1 level on lateral view due to underpenetration; and 2) Degenerative facet changes lower lumbar segments as noted. (Tr. 238).

On February 25, 2009, an MRI of Plaintiff's lumbar spine without contrast was

performed. (Tr. 236). The impression was:

> #1. At T12-L1 on the left, there is abnormality involving the neural foramen. This could represent either arachnoid diverticulum or a neurofibroma of other nerve root sheath tumors and post gadolinum exam would be helpful;
> #2. Disk protrusions particularly at L4-5 central and to the left. Small central paracentral disk protrusion at L2-3 on the right. Small central disk bulge/protrusion L5-S1 as described.

(Tr. 236).

On March 9, 2009, Plaintiff saw Dr. Joseph W. Queeney at River Valley Musculoskeletal Center, for surgical evaluation of chronic back pain. (Tr. 250-251, 283-284, 356-357, 358-359). Dr. Queeney reported that Plaintiff had tried Flexeril, Skelaxin and Zanaflex, which helped. (Tr. 250). He noted that Plaintiff was 5'8" tall and was obese at 327 pounds. (Tr. 250). Her heart was at a regular rate and rhythm without murmurs. Her lungs were clear to auscultation bilaterally. Shortness of breath was not observed. Examination revealed the upper and lower extremities were symmetric. (Tr. 250-251). No deformities were appreciated. Further examination of the lower extremities revealed bilateral patellar DTRs (deep tendon reflexes) were graded "trace/4." (Tr. 251). Bilateral Achilles DTR's were "0/4." (Tr. 251). Negative straight leg raising and stretch signs were reported. Patrick's test[2] was negative. Plantar pinprick and temperature was intact in the lower extremities, and palpation of the lumbar spine did not reveal any palpable spasm. Plaintiff did not have any tenderness. (Tr. 251). The impression was degenerative disc disease of the lumbar spine. Dr. Queeney thought the majority of the degenerative disc disease was due to Plaintiff's weight. (Tr. 251).

---

[2]Patrick test - (for arthritis of the hip) with the patient supine, the thigh and knee are flexed and the external malleolus is placed over the patella of the opposite leg; the knee is depressed, and if pain is produced, arthritis of the hip is indicated. Patrick called this test *fabere sign*, from the initial letters of movements that are necessary to elicit it, namely, flexion, abduction, external rotation, extension. Dorland's Illustrated Medical Dictionary 1920 (31st ed. 2007).

An "MR of lumbar spine with and without IV contrast" was performed on March 13, 2009, and the findings suggested a 1.8 x 1.5 cm. nerve root sheath cyst filling the left foramen at T12-L1. No suspicious areas of enhancement were noted. (Tr. 241).

On March 16, 2009, Plaintiff presented to Dr. Queeney for follow-up. Dr. Queeney reported that the MRI scan showed a cyst on the nerve root sleeve off to the left side, and no evidence of any tumor. He reported that at that point in time, "this is certainly nothing surgical." He reported that most likely this occurred in utero and he thought she was "doing quite well." (Tr. 240). Plaintiff was to continue with her physical therapy and continue with her anti-inflammatory medications, and Dr. Queeney reported no surgery was needed for her. (Tr. 240).

On April 13, 2009, x-rays of Plaintiff's hips were taken. The hip joint spaces were normal and there were no fractures or subluxation or soft tissue masses. Plaintiff had no significant hip abnormality. (Tr. 264).

Plaintiff was treated by her chiropractor, Dr. Lance Clouse, over a period from July 23, 2008 to July 28, 2008 and July 17, 2009 to August 7, 2009. (Tr. 206-213, 287-313). On July 24, 2009, a Medical Source Statement of Ability to Do Work-Related Activities (Physical) was completed by Dr. Clouse. (Tr. 273-274). In the report, Dr. Clouse diagnosed Plaintiff with "Lumbalgia with radiculopathy into the lower extremity due to disc herniations." (Tr. 273). He reported that Plaintiff could: sit, stand, walk for 20 minutes total at one time in an 8 hour workday; sit, stand, walk for 40-45 minutes total during an 8 hour day; use both hands for simple grasping and fine manipulation; not use both hands for pushing and pulling; not use her feet for repetitive movements as in operating foot controls; not bend, squat, crawl, climb, reach above head, stoop, crouch, or kneel; not tolerate exposure to unprotected heights, marked

AO72A
(Rev. 8/82)

temperature changes, or driving automotive equipment; occasionally be around moving machinery; and tolerate exposure to dust, fumes & gases and exposure to noise. (Tr. 273-274) Dr. Clouse also concluded that Plaintiff would sometimes need to take unscheduled breaks during an 8 hour working shift; that her impairments were likely to produce bad days; that she was likely to be absent from work more than four days per month as a result of her impairments; and that she would need to elevate her feet periodically during the day. (Tr. 273-274).

On April 26, 2010, Plaintiff began seeing Dr. Rodney McDonald, of IMWell Health, with depression, a sore throat, and heart burn. (Tr. 319). Plaintiff reported to Dr. McDonald that she had gained 100 pounds due to inactivity, which had made her depression worse. She reported she had tried Citalopram, but it gave her headaches. She had no other complaints. (Tr. 319). Dr. McDonald assessed Plaintiff with allergic rhinitis and depression. (Tr. 321).

Plaintiff again saw Dr. McDonald on June 4, 2010, for follow-up on her depression. She was taking Buproprion twice a day for depression, and reported it was working well. (Tr. 316). Plaintiff was very happy with the results and did not feel there was any need for dosage increase. (Tr. 316). Dr. McDonald assessed Plaintiff with prehypertension, obesity, and depression. (Tr. 318).

On August 11, 2010, Plaintiff saw Dr. Suzanne Rodgers of IMWell Health, complaining of left shoulder pain and low back pain. (Tr. 373). She was requesting pain medication, and weighed 352 pounds. (Tr. 332-374). Plaintiff was assessed with obesity and low back pain. (Tr. 375). Dr. Rodgers reported that she educated Plaintiff about a proper diet, and discussed with her the fact that weight loss was very important for her back pain. (Tr. 375). Plaintiff indicated she was aware of such, but was unable to exercise. They discussed diet and the fact that Plaintiff

must cut calories. (Tr. 375).

In his decision, the ALJ gave slight weight to Dr. Payne's assessment, slight weight to what was thought to be Dr. Floyd's opinion, and little weight to Dr. Clouse's opinion, stating that:

> Dr. Clouse was a chiropractor and there is [sic] no objective findings contained in his progress notes that would provide support for his assessment. While there are annotations of tenderness, edema, joint fixation, and muscle spasms, there is no definitive notation regarding the severity of these findings (Exhibit 13F). As discussed in detail above, the medical record fails to provide any evidence of gait disturbance, motor deficits or sensory abnormalities (Exhibit 12F).

(Tr. 19). The ALJ was justified in giving Dr. Clouse's opinion little weight, as a chiropractor is not an "acceptable source of medical evidence to prove disability; such evidence may only be used to show how an impairment affects the claimant's ability to work." Fuller v. Social Security Administration, No. 8:07CV125, 2007 WL 4527511, at *13 (D.Neb. Dec. 17, 2007). The ALJ found that the objective clinical findings did not support Plaintiff's alleged symptoms or functional limitations, as she had no neurological deficits, no significant orthopedic abnormalities, and no serious dysfunctioning of the bodily organs that would preclude her from performing the work he described. In addition, Plaintiff's depression was controlled by her most recent medication, as reported to Dr. McDonald on June 4, 2010. (Tr. 316).

Even if the ALJ gave little or no weight to the opinion rendered by Dr. Floyd or Dr. Clouse, the objective medical evidence, along with the Physical RFC Assessment completed by Dr. Payne, would support a finding that Plaintiff would be able to return to her past work as a data entry clerk and production analyst in a nursing home.

AO72A
(Rev. 8/82)

### C. Effect of Obesity:

Plaintiff argues that "While giving lip service to the appropriate ruling and regulations, the ALJ fails to properly consider the effects of obesity." (Doc. 11 at p. 15). In his decision, the ALJ specifically addressed obesity.

> There is no Listing which specifically addresses obesity. Section 1.00(Q) of Appendix 1 of the Regulations states, however, that obesity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system, and disturbance of this system can be a major cause of disability in individuals with obesity. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential process, including when assessing an individuals' residual functional capacity, consideration must be given to any additional and cumulative effects of obesity.
> . . .
> As discussed fully in the body of this decision, the claimant's obesity, singly or in combination does not meet or medically equal in severity the medical criteria of any impairment found in Appendix 1.

(Tr. 16).

The Eighth Circuit has held that "when an ALJ references the claimant's obesity during the claim evaluation process, such review may be sufficient to avoid reversal." Heino v. Astrue, 578 F.3d 873, 880 (8th Cir. 2009). The ALJ in this case made numerous references to Plaintiff's obesity. He reported that the medical record showed a history of back pain, which began in February 2008, and obesity. (Tr. 14). The ALJ stated that on July 18, 2008, Plaintiff's weight was recorded as 318 pounds, and at the hearing, the Plaintiff testified that her height was 5 feet 8 inches and her weight was 340 pounds. (Tr. 14). He also reported that her Body Mass Index (BMI) was calculated at 51.7, which is considered obese. (Tr. 14). The ALJ further noted that despite Plaintiff's obesity and back problems, Plaintiff did not require an assistive device for ambulation. (Tr. 17). He also stated that despite her obesity, she had good posture, her gait and

station were within normal limits, her respiratory and cardiovascular examinations were unremarkable, and her blood pressure was normal at 114/75. (Tr. 17). He noted that when seen in February 11, 2009, examination of her extremities was negative for any edema. (Tr. 17).

Finally, although Plaintiff's treating doctors noted that Plaintiff was obese and should lose weight, they did not suggest her obesity imposed any additional work-related limitations. See Forte v. Barnhart, 377 F.3d 892, 896-897 (8th Cir. 2004)(none of claimant's doctors suggested his obesity imposed any work-related limitations, and claimant did not testify that his obesity imposed additional restrictions).

Clearly, the record indicates that the ALJ considered Plaintiff's obesity when evaluating her claim.

### D. Side Effects of Medication:

Plaintiff's brief argument on this point references her testimony where she stated that she was not safe to drive on her medication, and that Zanaflex knocked her completely out. Plaintiff does not point to any record which indicates she reported this side effect to any of her physicians. Failure to report alleged medication side effects to her physicians is relevant in the evaluation of the credibility of those alleged side effects. See Zeiler v. Barnhart, 384 F.3d 932, 936 (8th Cir. 2004)(claimant did not complain to her doctors that her pain medication made concentration difficult).

### E. Subjective Complaints and Credibility Analysis:

Plaintiff argues that the ALJ did not give good reasons for discrediting Plaintiff's testimony, but simply attempts to discredit it.

The ALJ was required to consider all the evidence relating to Plaintiff's subjective

-12-

complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards, 314 F.3d at 966.

After reviewing the administrative record, it is clear that the ALJ properly evaluated Plaintiff's subjective complaints. Plaintiff contends that her impairments were disabling. However, the evidence of record does not support this conclusion.

The ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent they were inconsistent with his RFC findings. He set out the objective medical evidence, much of which was set forth above. In addition, he noted that MRI findings of the lumbar spine dated February 25, 2009, exhibited an abnormality involving the T-12-L1 level on the left consistent with arachnoid diverticulum, or a neurofibroma or other nerve root sheath tumors. (Tr. 17-18). He also noted that there was evidence of disc protrusions, particularly at the L4-5 level centrally and to the left, small central paracentral S1 level. However, the ALJ correctly noted that there was no objective evidence of significant motor, sensory, reflex or neurological deficits. (Tr. 18).

The ALJ also specifically referred to Plaintiff's treatment at the River Valley Musculoskeletal Center, which was discussed in detail above.

-13-

In an Undated Disability Report- Appeal, Plaintiff reported that her pain was in her hips and legs and that her feet went numb. (Tr. 164). She reported taking Ambien CR to sleep, Citalopram for depression, Meloxicam for back pain, and Zanaflex for back pain. (Tr. 166).

In a February 26, 2009 Function Report - Adult, Plaintiff reported that her daily activities included getting dressed, eating breakfast, sitting in the recliner, picking up her daughter from school, lying down, eating dinner, showering, and going to bed. (Tr. 172). She also reported taking care of her husband and daughter, preparing dinner, helping with homework, and having family time. (Tr. 1720. She reported that her husband took her daughter to school and helped her do housework such as sweeping, mopping, laundry, and helped with her daughter's care. (Tr. 173). She reported showering only, and that her husband helped her shave. (Tr. 173). She reported watching television, using the internet, and reading every day. (Tr. 176). She reported only being able to sit for 10 or 15 minutes, then having to lie down. (Tr. 176). However, at the hearing, she stated that she could sit in an office-type chair for thirty or forty minutes. (Tr. 41).

The ALJ did not rely solely on Plaintiff's ability to engage in daily activities in making his credibility assessment. The medical evidence of record certainly suggests Plaintiff has the RFC to perform sedentary work. "While an ALJ may not disregard subjective pain allegations solely because they are not fully supported by objective medical evidence, an ALJ is entitled to make a factual determination that a claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary." Jones v. Astrue, 619 F.3d 963, 974 (8th Cir. 2010)(quoting Baker v. Barnhart, 457 F.3d 882, 892-893 (8th Cir. 2006).

The Court believes there is substantial evidence to support the ALJ's credibility findings.

AO72A
(Rev. 8/82)

**F. Hypothetical Question to the VE:**

Plaintiff argues that it appears that there is some discrepancy in the two RFC's which are presented in the opinion and in the trial transcript, and that clarification may be required as to what the ALJ actually intended. (Doc. 11 at p. 11). In the first hypothetical presented to the VE by the ALJ, sedentary work was described:

> Please assume a younger individual with a high school education, who can lift and carry ten pounds occasionally and less than ten pounds frequently. The individual can sit for about six hours during an eight-hour workday, and stand and walk for at least two hours during an eight-hour workday. The individual can occasionally climb ramps, stairs, balance, stoop, kneel, crouch and crawl. Individual cannot climb ladders, ropes and scaffolds. Based upon the hypothetical and the claimant's past work as a data entry clerk and a production analyst be available?

(Tr. 54).[3]  The VE answered the question: "Yes, sir, as performed." (Tr. 54).

In the ALJ's decision, the ALJ found that Plaintiff had the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) with an ability to lift and carry 10 pounds occasionally and 10 pounds frequently. The claimant is able to sit for about 6 hours during an eight-hour workday and stand and walk for at least 2 hours during an eight-hour workday. The claimant is able to occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. The claimant is unable to climb ladders, ropes or scaffolds. Claimant is capable of performing past relevant work as a data entry clerk and production analyst in a nursing home.

(Tr. 16-19).

Although the ALJ mentioned "light work" in his RFC finding, the actual definition really

---

[3] Sedentary work is defined in the regulations as follows:
> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

-15-

encompassed sedentary work. As argued by Defendant, Plaintiff cannot show any resulting prejudice from the ALJ's error in referencing "light work," and remand is not warranted. Samons v. Astrue, 497 F.3d 813, 822 (8th Cir. 2007)(holding that although the ALJ erred in failing to address a particular question sufficiently, the court could not see how the failure prejudiced Plaintiff and would not remand."'[absent unfairness or prejudice.'")(quoting Phelan v. Bowen, 846 F.2d 478, 481 (8th Cir. 1988; see e.g., Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988)(per curiam)("This court will not vacate a judgment unless the substantial rights of a party have been affected").

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the VE fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the VE's testimony constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing her past work as a data entry clerk or production analyst in a nursing home. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**IV.   Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision

should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 19th day of June, 2012.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)